14379

STATE v. CARROLL

(188 S. E., 374)

*Messrs. Bryson, Bowen & Pyle* and *H. C. Miller,* for appellant,

*Messrs. J. G. Leatherwood, Solicitor,* and *T. A. Wofford, Asst. Solicitor,* for the State.

November 13, 1936.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

The defendant, Lillian Carroll, and another woman, Cora Hobard, were jointly charged, under an indictment for murder, with the killing of one Murph Grumbles, who was shot and fatally wounded on Saturday evening, June 8, 1935. Lillian alone was tried, and was convicted of manslaughter and sentenced to imprisonment for five years. She appeals.

The agreed statement contained in the record is substantially as follows: On the afternoon of the day named, Grumbles and three others, Malloy, Nelson, and O'Shields, met at the jockey lot in the City of Greenville and from there set out upon a roaming expedition. Shortly after leaving their meeting place, they bought a half-gallon of whiskey and then went to the home of a woman by the name of Whitfield, near the old airport, two or three miles north of Greenville, where they drank some of the liquor and bottled up and divided the balance of it. Pauline Reed, a young girl who was staying at the Whitfield house, left there that evening because of the conduct of Grumbles toward her; and one Red Couch, who passed by during the time, had some words and very nearly a fight with the deceased, because of his treatment of the girl. Finally, the four men left the Whitfield house and started back to Greenville. On their way, they passed by the home of the defendant Carroll, but saw no one there. About one hundred yards farther on, they reached the place of Cora Hobart. It was then about 9 or 9:30 o'clock at night. Cora was standing in the road just in front of her house; her husband was not at home; and her four children were asleep in bed. When the men came up to where she was, Cora and Grumbles engaged in a conversation and some trouble ensued between them, and he slapped her; whereupon she called for one Homer Gosnell, who had just gone by, and also for one John Cape, who lived at the home of the defendant, Carroll. In response to the call, Cape drove to the Hobart house in his automobile, arriving just as Gosnell came up, and Gosnell got into the car with him and they left to get the officers. Cora testified at the trial of Lillian that after Cape and Gosnell had gone, Grumbles threw a brick at her, and that she heard one of the other men say that the deceased had a pistol and would shoot, and that she then shot him. Other witnesses stated that they saw Cora at the scene of the shooting with a pistol in her hand.

The State claimed, and offered evidence in support of its contention, that the defendant, Carroll, came from her home to the road in front of the Hobart house, and there, without provocation, fired the shots that killed Grumbles. Some of the State's witnesses, the companions of the deceased, stated that, after Cape and Gosnell left, an automobile drove up to the Hobart house and stopped, and that they could see the defendant, Carroll, by the one light of this car, standing nearby; that the people in the automobile did not get out or say anything; and that they did not know who they were.

Nelson, Hobart, and other witness for the defense testified that they were present but did not see any such car. The defendant denied that she did the shooting or that she was even at the Hobart home at the time it was said to have occurred. The record also discloses, according to the undisputed testimony of E. E. Moser, deputy sheriff, that he made an investigation of the matter on the night of the homicide; that he found the pistol that was introduced in evidence locked up in Cora Hobart's trunk in her home; and, in view of the statement made by her at the time with reference to the shooting, he arrested her and put her in jail. It was also undisputed that Gosnell and Cape were also charged with the killing of Grumbles.

One of appellant's exceptions, of which there were only two, was abandoned by her counsel upon the hearing of the appeal. By the other, which we will now consider, error is imputed to the trial Judge "in permitting Lonnie O'Shields to testify of a conversation he is supposed to have had with Mr. Pritchett shortly after the shooting", it being submitted that this conversation was not a part of the *res gestae,* and was not had in the presence of the defendant.

What happened was this: When O'Shields, a witness for the State, was on the stand, he gave his version of how the homicide occurred, testifying that he saw the defendant, Lillian Carroll, shoot the deceased; he also stated that he himself was shot at the time and was taken to the hospital. The examination then continued as follows:

"Q. Do you recall who took you to the hospital? A. Mr. Pritchett.

"Q. Did you or not tell him about the shooting? A. Yes, sir.

"Q. Did you tell him the same thing you are telling right now?

"By Mr. Epps: Your Honor, we don't know what—

"The Court: I don't know about that, Mr. Smoak, the witness has already testified he told him all that he knew with reference to the shooting.

"By Mr. Smoak:

"Q. How long after the shooting before you saw Mr. Pritchett? A. It was about fifteen minutes.

"Q. Well, I guess that would take it out."

On cross-examination of the witness, Mr. Bowen, of counsel for the defense, questioned him as to whether he did not, while at the hospital, tell the brother of Grumbles that he did not know who did the shooting. He answered that he did not, but that he told him it was a woman, and "I said I am not talking." He also stated that two men approached him, upon his arrival at the hospital, and asked him who had done the shooting, and that he had told them, "I don't know, I am not talking now." Then followed this question and answer:

"Q. When did you decide it was Lillian Carroll here? A. Well, I knew it when I left the place where I was shot at; I told Mr. Pritchett she done it."

It will be noted that the part of the answer, "I told Mr. Pritchett she done it," was not responsive to the question asked. But the defense did not move to strike it out and it remained in the record. In view of this, counsel for the State, on redirect examination of O'Shields, sought to have him say what he had told Pritchett about the shooting, and the Court permitted the question and answer:

"Q. What was it you told him (Mr. Bowen) about what you said to Mr. Pritchett? A. I walked up to the car and I said, Mister, will you carry me to the hospital and he

hesitated and I walked around in the light and showed him I was shot and he said sure I will take you to the hospital, and I got in and went on and he said who shot you and I said Lillian Carroll done the shooting and I said Murph Grumbles is out there shot somewhere."

This testimony was objected to by the defendant, but the trial Judge ruled it admissible on the ground that similar evidence had been brought out by the defense itself on cross-examination of the witness.

It is conceded that the statements alleged to have been made by O'Shields to Pritchett were not a part of the *res gestae* and were not made in the presence of the defendant. It is undoubtedly true, we think, that the only possible reason for having the witness testify to these declarations made by him out of Court was to bolster up and to lend effect to his positive testimony as to how the killing occurred. The State found itself in a somewhat difficult situation. At least two of its witnesses, upon whom it relied to prove the charge made against the defendant, had been themselves, admittedly, convicted of crime; and the conduct of some of them in the afternoon of the day leading up to the homicide was not such as would recommend them very highly to the jury. Furthermore, as has been pointed out, the shooting took place in the public road just in front of the home of Cora Hobart, the house standing within a few feet of the roadside; and just a short while before the shooting there was some trouble between the Hobart woman and the deceased. She claimed that she shot him in self-defense, and she was arrested and placed in jail. Others also were charged with the crime. The defendant was later accused, and counsel for the defense, on trial of the case, apparently proceeded on the theory that the charge against her, in the circumstances detailed, was an afterthought on the part of O'Shields and of at least another witness for the State. The proof of these alleged declarations of the witness O'Shields, therefore, doubtless caused the jury to give more weight to his testimony, that he saw the defendant shoot the deceased,

than they would otherwise have given it. Of course, such declarations were incompetent to prove, in whole or in part, the offense charged.

Was the testimony admissible for the reason stated by the trial Judge? It is seen that the answer of the witness, "I told Mr. Pritchett she done it," to the question of defendant's counsel, was not a detailed statement of the conversation which O'Shields claimed took place between him and Pritchett. Undoubtedly, on redirect examination, the solicitor might properly have had him repeat his answer to the question of Mr. Bowen, for the purpose of calling the "jury's attention to it." But he went much farther than that. He had the witness testify as to the details of the alleged conversation—the attending circumstances and the words spoken. We think the Court was in error in allowing this to be done, and there can be no doubt that such error was prejudicial to the defendant.

The judgment of the Circuit Court, therefore, is reversed, and the case remanded for a new trial.

MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE, and MR. ACTING ASSOCIATE JUSTICE A. L. GASTON concur.